### 6962. SEABOARD AIR-LINE RAILWAY *v.* INSURANCE COMPANY OF NORTH AMERICA.

1. One having the right of subrogation under the law and having a subrogation agreement from his predecessors may maintain a suit on that right; and a recovery in such a suit is not barred by the fact that the plaintiff's predecessors recovered a judgment against the defendant for the same cause of action, when it appears that the right of subrogation and the agreement therefor antedated the filing of the suit in which the recovery was had, and that the judgment did not cover the items of damage to which the plaintiff was subrogated.

2. Generally a single cause of action with several elements of damage admits of but one action, where there is an identity of subject-matter

and of parties. These two elements of identity being wanting, a judgment rendered in a former suit, brought by a predecessor of one claiming under a subrogation accruing before the bringing of that suit, does not operate as res adjudicata as to the rights of the latter in a subsequent suit to enforce his right of subrogation.

3. A jugment of a court of competent jurisdiction is conclusive between the parties to the case and their privies as to all matters put in issue or which could legally have been put in issue in the case; but one with a right of subrogation accruing before the bringing of the suit in which the judgment was rendered is not a privy, so as to be concluded by the judgment, especially when the right of subrogation is claimed on an item of damage expressly excluded from that suit.

DECIDED JUNE 30, 1916.

Action on insurance policy; from city court of Elberton—Judge Grogan. August 31, 1915.

*Cobb, Erwin & Rucker, Z. B. Rogers, H. J. Brewer,* for plaintiff in error, cited: 23 Cyc. (Judgments) 1171, note 72, 1174, 1178; 24 A. & E. Enc. Law (2d ed.), 786; *Atlanta Elevator Co.* v. *Fulton Mills,* 106 *Ga.* 427; *Cunningham* v. *Morris,* 19 *Ga.* 583; *Broxton* v. *Nelson,* 103 *Ga.* 327; Beronio *v.* R. Co., 86 Cal. 415 (21 Am. St. R. 57); *Stevens* v. *Stembridge,* 104 *Ga.* 619; King *v.* R. Co., 50 L. R. A. 161, note; 1 R. C. L. 346; Knowlton *v.* R. Co., 1 L. R. A. 625; Steiglider *v.* Ry. Co., 38 Mo. App. 511; Trask *v.* R. Co., 2 Allen, 331; Kansas City &c. R. Co. *v.* Shutt, 20 Anno. Cases, 255; 1 Corpus Juris (splitting cause of action), 1106-1116.

*Worley & Nall,* contra, cited: Freeman on Judgments, § 252; *Stevens* v. *Stembridge,* 104 *Ga.* 622; 2 Black on Judgments, §§ 549, 740; *Garrard* v. *Hull,* 92 *Ga.* 787; *Elwell* v. *New England Mortgage Co.,* 101 *Ga.* 496; *Patapsco Guano Co.* v. *Hurst,* 106 *Ga.* 184; Phœnix Ins. Co. *v.* Penn. Co., 20 L. R. A. 410; *Holcombe* v. *R. Co.,* 78 *Ga.* 776; *Norwich &c. Ins. Co.* v. *Bainbridge Grocery Co.,* 16 *Ga. App.* 432; *Hooper* v. *Ry Co.,* 112 *Ga.* 96; *Central R. Co.* v. *Brinson,* 64 *Ga.* 475; California Dry Dock Co. *v.* Armstrong, 17 Fed 216; St. Louis &c. R. Co. *v.* Fire Asso. of Philadelphia, 28 L. R. A.

HODGES, J. It appears, from the agreed statement of facts, that J. C. and H. B. Swearingen composed a firm conducting business under the name of Elberton Planing Mills, and they owned a planing mill and other buildings, to which the Seaboard Air-Line Railway set fire. After the fire the Swearingens and the Elberton Planing Mills entered into an agreement of subrogation with the Insurance Company of North America, whereby, in consideration

of the payment of certain amounts of insurance carried by the company on a certain frame barn and two frame dwelling-houses on McDonough street, Elberton, Georgia, the company was subrogated to their rights as to these items. The railway company, by sparks emitted from one of its locomotives, destroyed the planing mill and its contents, and injured and damaged the property covered by the policies of insurance. After making the agreement of subrogation with the insurance company a suit was brought by J. C. and H. B. Swearingen for certain items of damage, and suit was brought by the Elberton Planing Mills for certain other items of damage against the railway company. These two suits did not cover and include the items of damage claimed by the insurance company under its alleged right of subrogation and the agreement made by the Swearingens and the Elberton Planing Mills before the bringing of the two suits described above, but, on the contrary, the items of damage for which the insurance company claimed the right of subrogation were expressly excluded in these last-mentioned suits. Judgments were recovered in behalf of the Swearingens and the Elberton Planing Mills, which the railway company paid. On the trial of the suit filed by the insurance company the railway company pleaded that the insurance company was concluded and bound by the payments already made on account of the fire, and that, as to the insurance company, all matters and things that were put in issue upon the trial of the cases brought by the Swearingens and the Elberton Planing Mills, or that could have been put in issue, were res adjudicata, the railway company contending that the insurance company was concluded as to its rights, if any it had, as a privy of the Swearingens and the Elberton Planing Mills. Judgment was rendered in favor of the insurance company against the railway company.

1. Under the law, the insurance company, having paid the insurance, had the right of subrogation under the insurance contract, and parties to the insurance contracts made agreements recognizing the right of the insurance company to subrogation some time in June, 1911, before the filing of suit against the railway company by any one for damages accruing out of this fire. Whatever rights the insurance company had by way of subrogation (under the agreed statement of facts upon which this case was adjudicated by the trial court) accrued to the insurance company

at the time of its payment of the insurance money to the insured and at the time of the making of the subrogation agreement between the Swearingens and the Elberton Planing Mills, and the Insurance Company of North America.  It will be observed that the Swearingens composed the firm conducting business under the name of the Elberton Planing Mills, and that they brought two separate actions for the single cause, and recovered in the two actions.  In the last case the railway company pleaded res adjudicata, and, judgment being rendered against the company on the plea, for reasons satisfactory to the railway company this judgment was paid.

It can not be questioned that the insurance company had a right of subrogation under the contract of insurance and under the law, and with the Swearingens and the Elberton Planing Mills by agreement in writing, made before the bringing of any suit.  It is insisted by the plaintiff in error that this right of subrogation was destroyed by the act of the Swearingens and the Elberton Planing Mills in bringing the two suits against the railway company; in other words, that the judgments rendered in the litigation arising on account of the fire concluded the rights of the insurance company on all the issues before the court or that could have been passed upon by the court upon these trials.  We do not think that this is the law.  It can not be conceived how the Swearingens and the Elberton Planing Mills could in any way place before the jury legally, on the trial of their litigation with the railway company, the right to damages in behalf of the insurance company, held by it by way of subrogation.  The insurance company had the right of subrogation under the law, and took an agreement from the Swearingens and the Elberton Planing Mills, recognizing that right.  Why could not the insurance company maintain a suit upon the right which accrued to it upon the payment of the insurance money and the making of the agreement antedating the bringing of the suits by the Swearingens and the Elberton Planing Mills?  In our opinion, the insurance company is not precluded from enforcing its right of subrogation by the fact that its predecessors, the Swearingens and the Elberton Planing Mills, had sued and recovered a judgment against the defendant railway company for the same cause of action.  It will be observed that though it was the same cause of action, there were different items

of damages, and three of these items, being covered by the three
policies carried by the insurance company, were held by the insur-
ance company by right of subrogation, and that this right accrued
to it and was recognized by the Swearingens and the Elberton
Planing Mills before any suit was brought against the railway com-
pany, and the title to this right of subrogation vested in the insur-
ance company, under the terms of the contract of insurance and the
agreement of the Swearingens and the Elberton Planing Mills be-
fore these parties took any action whatever looking to the recovery
of the items of damages remaining to them. In the suits filed by
the Swearingens and the Elberton Planing Mills the items claimed
by the insurance company were expressly excluded, and it can not
be said that the plaintiffs in these two suits could have legally put
in issue before the court on these trials the items of damage
claimed by the insurance company. The principle of law which
it seems to us controls this proposition has been long recognized in
Georgia: "Where the doctrine of lis pendens applies, privies are
concluded by a final judgment on the merits in a case pending
when they purchased; but there is, perhaps, no instance in the
whole law where privies in estate are held affected by the result of
litigation in a suit commenced by or against a predecessor in the
title after he has transmitted all the title he ever had." *Rucker* v.
*Womack*, 55 *Ga.* 401. The same principle enunciated by Judge
Bleckley in the case last cited was applied by Justice Cobb in the
case of *Marshall* v. *Charland*, 106 *Ga.* 42 (31 S. E. 791), in which
the court says: "The title of the claimant under the proceedings
setting apart to her a year's support having been acquired before
the suit was filed to enforce a special lien on the property set apart
to her, she would not be precluded, under the operation of the
doctrine of lis pendens, from attacking for usury the deed which
is relied upon as the foundation of the lien sought to be enforced
under a judgment rendered on proceedings begun after title to the
year's support had vested in her. She stands in the same posi-
tion as if she had purchased the property from her husband; and
a purchaser from him before proceedings begun to enforce the
security deed made by him would be allowed to attack such a
security deed for usury. The doctrine of lis pendens, of course,
has no application to such a case." In the discussion of the case
the learned Justice quotes from the opinion of Judge Bleckley in

*Rucker* v. *Womack,* supra.   The rule was also applied in the case of *White* v. *Interstate Building and Loan Association,* 106 *Ga.* 146, 150 (32 S. E. 26), where it was said by Justice Cobb:   The claimant's "rights in the property being complete long before the suit against her husband was filed, she, of course, is not concluded by the judgment in that case, and has the right; on a claim filed to the levy of the execution issued on such judgment, to raise the question as to the validity of the deed which was the foundation of the special lien now asserted on the property by the loan association."   The question was presented in the case of *Patapsco Guano Co.* v. *Hurst,* 106 *Ga.* 184 (32 S. E. 136), in which Justice Cobb, speaking for the court, said:   "Does the fact that Mrs. Clark, after she had executed the mortgage, saw fit to litigate with the creditor of her husband on the question of title, affect the rights of her mortgage creditor, whose interest in the property accrued long before the beginning of the litigation?   We think not.   The doctrine of lis pendens is relied on to sustain the contention of the plaintiff in execution.   This doctrine can have no application where there is no suit pending at the time the rights of the person sought to be charged attached to the property.   It is clear that  .   .   the mortgagees were not in any way affected by the litigation between Mrs. Clark and the creditor of her husband, the litigation having arisen after the mortgage was executed."

In our opinion the right of the insurance company to subrogation was unaffected in any way by the subsequent litigation between the predecessors of the insurance company and the railway company, and the insurance company is not such a privy as to be precluded by a judgment rendered on a suit filed subsequently to the accrual of the right of subrogation, not covering and including items of damages for which the insurance company claimed the right of subrogation.

2.   While it is true that a single cause producing several elements of damage admits of only one action or suit, the rule is not without limitation.   In order for this rule to apply, there must be an identity of subject-matter and of persons and parties.   If a judgment is rendered in a suit wanting in either of these two elements, the doctrine of res adjudicata does not apply as to the rights of another person claiming under the right of subrogation accruing to him before the bringing of the suit, the foundation or

basis of the judgment pleaded in bar to his action.  Identity of subject-matter and of persons and parties is absolutely essential for the doctrine of res adjudicata to apply.  In this case these essential elements were wanting; there was no identity of subject-matter and no identity of parties, and the insurance company was not a privy so as to be bound by the judgment rendered in this case.

3.  Under the law, judgments of courts of competent jurisdiction are conclusive and of binding force and effect on the parties to the case and their privies as to all matters and things put in issue or that could have been legally put in issue on trial of the original case, but this rule can not be made to apply to one claiming a right of subrogation accruing to him before the commencement of any litigation, especially when his claim to subrogation covers items and things assigned to him by the agreement of his predecessors, which are not included in the suit, the basis of the judgment pleaded in bar.  The agreement of the Swearingens and the Elberton Planing Mills recognizing the right of the insurance company to subrogation on certain items and authorizing the collection of damages therefor is not a "splitting of actions," in legal contemplation.  Under the insurance contract, the company had the right of subrogation in equity upon the items paid for by the company, and, in our opinion, the agreement of the Swearingens in furtherance of this right was not a "splitting of actions," especially when it appears from the record that the items of damage claimed in the instant case were not included in the pleadings, and, under the law, could not have legally been put in issue.

The judgment of the trial judge, finding in favor of the plaintiff on the agreed statement of facts, is not contrary to law and the evidence.                -      .                 *Judgment affirmed.*